Simon, J.
The pretensions of the plaintiff against Yalerien Allain, ex-sheriff of the parish of Orleans, are founded on the following state of facts and circumstances disclosed by the record : It appears, that on the 11th January, 1843, a suit was instituted by the plaintiff against Adéle Wiltz, and her husband Evariste Wiltz, and against Mary Pailhes and her husband, to recover of them, in solido, the sum of $450, with interest. On the 14th of the same month, the defendants Wiltz confessed a judgment for *501 the amount claimed in the plaintiff’s petition, whereupon, on the same day, a final judgment was rendered and signed by the District Court in favor of the latter. On the same day, (14th January, 1843,) a writ of fi. fa. was issued on the judgment, directed to the Sheriff of the District Court, which was returned by the deputy sheriff on the fourth Monday of February following, (the day fixed in the writ,) in the manner following, to wit: “ Received, 14th January, 1843. My predecessor had seized on the same day in the hands of Yalerien Allain, Esq., Sheriff of the parish of Orleans, tioo notes or bonds of Charlotte Ganches, favor of Augier and C. Cabornet, received by the said Sheriff Allain in the case of Adéle Montreuil, wife of Evariste Wiltz, v. Moreau, dated 25th June, 1842, at 12 months, one for $469 60, and the other for $100. No other property found to seize, after due demand of both parties.” In the mean time, the suit went on against Pailhes and wife, a judgment by default was taken against them, which was made final on the 7th of March, 1843 ; and the record shows that a writ of fi. fa. was issued against Pailhes and wife on the 9th of August, 1843, directed to the Sheriff of the parish of Jefferson, returnable on the 4th Monday of September, but not yet returned.
It does not appear that any further proceeding was had against Wiltz and wife, after the return of the execution first issued against them. In the meantime, the bonds seized in the hands of Y. Allain became due, (25th June, 1843,) and nothing shows that any thing was ever done on the execution issued against Pailhes and wife, when on the 24th of November, 1843, (nearly nine months after the return of the first writ,) the plaintiff presented a petition to the court, a qua, in which he prays that Yalerien Allain, late Sheriff of the Parish Court, in whose possession he believes the credits heretofore seized against Mrs. Wiltz were at the time of the seizure, may be cited to answer certain interrogatories, which were answered as follows: 1st. That he, Y. Allain, has been in possession of two bonds, the description of which corresponds with that given in the first question, in both of which the costs of suit were comprised.
2d. That’different notes of seizure were lodged in his hands in *502 relation to said bonds; that the one from the District Court was not the first, and was served on the 14th January, 1843.
3d. That said bonds have not been paid in his hands. That when he resigned his office as Sheriff, he delivered them over to his successor in office, through Armand Pitot, Esq., one of his attorneys, and that he has not held or seen them since.
On the 7th of December ensuing, on plaintiff’s suggesting to the court, that there was an error in Allain’s answer to the second interrogatory, it was ordered, that he be ruled to show cause' why plaintiff should not contest the correctness of said answer ; and why, notwithstanding said answers, he, said Allain, should not pay over forthwith to the Sheriff of the District Court, the sum of $569 69, the amount of the two bonds seized by the said Sheriff.
On the trial of the rule several witnesses were examined, the purport of whose testimony goes to establish, that the bonds in question were delivered by Allain to Armand Pitot, as one of the attorneys of his successor ; that they were unpaid ; and that an order of seizure and sale was obtained thereon on behalf of the new Sheriff. Pitot testifies, that he does not know by what authority he demanded the bonds of Allain, but that he was anxious to have them paid, and took them to have the property sold. He also states, that he did not demand the bonds of Allain on behalf of any body; they were about falling due, and Allain told him, that as he was the Sheriff’s attorney, he had better take the bonds. That he did so, had the bonds protested, and issued an order of seizure and sale thereon. He further proves, that the right of Mrs. Wiltz in said bonds was sold to one Leaumont for ten dollars.
The testimony of D. Augustin, (Allain’s successor in office,) shows in substance, that an inventory was made of all that was handed over to him by his predecessor ; that the two bonds are comprised -therein ; that Denis and Pitot were his attorneys as Sheriff; and that Pitot never spoke to him of Allain’s handing over the bonds in question. The deputy marshal of the City Court shows, that in the suit of Leaumont v. Mrs. E. Wiltz, the marshal seized all the rights of the defendant, Adéle Wiltz, in the suit brought by her against Moreau, which were sold to *503 Leanmont by the marshal for ten dollars, being the highest bid. It is admitted, that in the suit of Dreux v. Mrs. Wiltz et al. a seizure issued, which was lodged in Allain’s hands, and subsequently satisfied, on the 12th of December, 1842.
The Judge, a quo, considering that the defendant Allain was, under the evidence, liable for the amount of the bonds seized in his hands, rendered judgment against him accordingly, making the rule absolute for the whole amount of said bonds j and the defendant has appealed.
The liability of the appellant to pay to the Sheriff of the District Court the amount of the bonds alleged to have been seized in his hands for the benefit of the plaintiff, whilst the appellant was Sheriff of the parish of Orleans, must depend upon the rights acquired by the plaintiff, by virtue of the action of the Sheriff of the District Court, under the execution issued on the 14th of January, 1843. If he acquired none, or if those which he then acquired were subsequently lost, it is clear he cannot recover.
We have already seen, that the execution under which it is pretended that the bonds in question were seized in the hands of the appellant, was returned on the fourth Monday of February, 1843, and that no further action was had upon it. The return of the Deputy Sheriff who states what had been done by his predecessor, and who does not pretend to show any act on his own part in the execution of the writ, goes no further than to show, that his predecessor had previously levied the execution by seizing in the hands of the appellant, in his capacity of Sheriff of the parish of Orleans, two notes or bonds made in favor of, and on their face belonging to other persons than the defendants in the execution ; but nothing appears to have been actually seized and taken by the officer into his possession : on the contrary, the notes remained in Allain’s possession, who continued to keep them, and who subsequently disposed of them by handing them over to his successor’s attorney. Was this a seizure in the true sense of the law ? It cannot be pretended that the proceedings had by the Sheriff of the District Court were in conformity with the 10th section of the law of 1841, (B. & C.’s Digest, 786,) for the bonds had never been seized by Allain, and were not in his hands subject to the privilege of any other seizing creditor; nay, *504 the admission contained in the record establishes, that the seizure which had been lodged in Allain’s hands was satisfied long before the plaintiff’s execution was issued. Allain did not keep the bonds as garnishee, as, at the time the execution was levied, no legal step whatever was taken to ascertain for whose benefit he held them, and to secure their production whenever necessary for the satisfaction of the execution under which the Sheriff was then acting. Considering those bonds, therefore, as property subject to be seized and sold to satisfy the plaintiff’s execution, it was clearly the duty of the Sheriff, who had seized them (the two notes or bonds, &c.) and not simply the right of the defendants to them, and who thus knew where they could be found, to take them into his possession, or at least to call upon Allain for their delivery, and, in case of his refusal, the plaintiff, as long as the writ offi.fa. was in the hands of the Sheriff, would have been entitled to his remedy under the 13th section of the law of 1839. Bullard & Curry’s Digest, p. 458. But nothing of this kind was ever attempted; the bonds were left in Allain’s hands, and a short time afterwards, the writ was returned. In the case of Goubeau v. New Orleans and Nashville Rail Road Company, (6 Robinson, 345,) we held in substance, that in order to make a legal and valid seizure of tangible property, from which the seizing creditor may acquire a privilege on the thing seized, it is necessary that the Sheriff should take the object seized into his possession ; and that the mere levying of an execution upon property found in the hands of the debtor or of a third person, without showing that the Sheriff took it into his actual possession, at least when he levied the writ, is not sufficient to confer any right on the creditor. The law of 1841 already quoted is perhaps the only exception, when the property is in the possession of one of the Sheriffs whom it creates, and by whom it had been previously seized. Here again, no attempt was made by the Sheriff to take the bonds into his actual possession. The only evidence of the seizure consists in the written statement made by his successor’s deputy, who does not appear to have ever acted under the writ: and, under such circumstances, we are constrained to say that the plaintiff has acquired no right under the seizure which *505 is the foundation of the present suit, and on which no further action was had either before or after the return of the execution.
With this view of the effect of the seizure relied on by the plaintiff, what right had he to garnishee the bonds in the hands of Allain nine months after the return of his execution, and during the pendency of the second execution issued at his request against Pailhes and wife for the same amount, and to call upon him for their delivery, or for the payment of the'money? The 13th section of the law of 1839, already referred to, gives him this right only when “ the plaintiff in a cause has applied for a writ of fieri facias.” Here there was no writ offi. fa. in the hands of the Sheriff of the District Court, at the time the interrogatories were propounded to the garnishee. Nothing had' been seized by virtue of the first writ. In the mean time, certain other circumstances had taken place, in consequence of which the bonds were no longer in the appellant’s possession ; and we cannot say, that it was his duty to keep them, and that he is bound to account to the plaintiff for the manner in which those bonds were disposed of subsequently. Leges vigilantibus, non dormientibus serviunt.
Under this opinion, it is unnecessary for us to inquire into the legal bearing of the facts established by the appellant’s answers to the interrogatories, and by the testimony of the witnesses. It seems, however, that the bonds in question were handed over by the appellant to the attorney of his successor in office, who was the person to whom it was his duty to deliver them. 17 La. 22.
But, however this may be, it is clear, that if any person has a right to call upon him to account for those bonds, it is not the plaintiff, whose rule should have been discharged.
It is, therefore, ordered and decreed, that the judgment of the District Court be annulled and reversed; and that the rule obtained by the plaintiff be discharged, with costs in both courts.